**STANDARD PARTS, Inc., v. TOLEDO PRESSED STEEL CO.**

**HUEBNER SUPPLY CO. v. SAME.**

**Nos. 7271, 7272.**

Circuit Court of Appeals, Sixth Circuit.

Dec. 7, 1937.

W. P. Bair, of Chicago, Ill. (Bair, Freeman & Sinclair, of Des Moines, Iowa, Holloway, Peppers & Romanoff, of Toledo, Ohio, Will Freeman, of Chicago, Ill., and W. R. Peppers, of Toledo, Ohio, on the brief), for appellants.

Wilber Owen, of Toledo, Ohio (and Owen & Owen, of Toledo, Ohio, on the brief), for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The Withrow and Close patent in suit, No. 1,732,708, issued October 22, 1929, relates to construction torches and truck flares for use as outdoor warning signals and adapted to emit luminescent flame protected from wind and rain. The appellants are dealers in flares competing with those made under the patent, and appeal from decrees sustaining its validity and granting relief for its infringement.

The only difference between a torch and a flare seems to be one of size. The former is intended for the contracting industry and is set out to guard street obstructions at night. A flare is for the use of trucks when they are temporarily halted at night upon the road. The invention, if any there is, lies in the construction of the guarded burner.

The bomb-shaped excavation torch, weighted against upsetting, with flattened bottom and a wick receiving opening in its top, was already old when this court in the light of prior art denied validity to McCloskey patent 1,610,301, in 1929. McCloskey v. Toledo Pressed Steel Co., 6 Cir., 30 F.2d 12. The appellee had, however, built up a substantial business in the open flame bomb-shaped torches of the McCloskey type before the present patent was granted. Although it claimed for such

torches capacity to burn in all kinds of weather, it now says that numerous complaints of their extinguishment by wind and rain led the present patentees to the long series of experiments and tests extending over a number of years which resulted in the burner and guard which is the subject matter of the patent in suit, that the device has successfully met the requirements of contractors and State Highway Commissions, has sold in large volume, has been the subject of license to several manufacturers, and has been copied without license by the manufacturer defending the present suits.

We see no patentable distinction in the many claims in suit, however, they may be differentiated from each other, were the issue solely one of infringement. The elements of claim 1, which relate to the guard or cap, require that it be disposed on the outer side of the torch body to enclose the outer end of the wick, that it have an imperforate upper wall, lateral flame openings, and air openings below the flame openings. Other claims variously describe these cap elements. Claim 2 recites the flame openings as adapted to emit luminescent flame, and designates the cap as a flame guard for the wick. Others speak of an outwardly extending flange in the region of the wick opening to which the cap is connected, and still others as having the bottom of the cap in heat conducting relation to the flange, or in heat transferring relation to the flange.

Stripped of variations in nomenclature, and the ingeniously differentiated phrases of counsel in setting forth the claims, the invention is for a burner with a metal guard to protect the flame from air currents and rain. The art is full of illustration and description of metal guards for burners, typical of which are the patents to Almond, No. 193,796; Blake, No. 453,335; Kahn, No. 1,755,527; Heston, No. 270,587, and Hathaway, No. 147,496. The challenge to their pertinence must be repelled. There is sufficient suggestion in a burner guard when it is found in one familiar contrivance to point the way to its use in another. We have often observed that where an art is a specialized development of an older art the offspring is entitled to the previously disclosed useful characteristics of the ancestral estate. Dunham Co. v. Cobb, 6 Cir., 19 F.2d 328; Page Steel & Wire Co. v. Smith Bros. Hardware Co., 6 Cir., 64 F.2d 512. A mere change in environment is not patentable unless invention may be found in the concept of the adaptation. Willett Mfg. Co. v. Root Spring Scraper Co., 6 Cir., 55 F. 2d 858. In Lakewood Engineering Co. v. Walker, 6 Cir., 23 F.2d 623, invention was found in the adaptation of an element from a wholly unrelated art where differences in size, weight, strength, purpose, and manner of use were such that no effective suggestion could have been furnished by the old device. Even there the question was recognized as close, and we have indicated that beyond that we ought not to go. Page Steel & Wire Co. v. Smith Bros. Hardware Co., supra.

Once again support for validity is sought in demonstration of commercial success. We have seen that the plaintiff was already a successful manufacturer of open flame flares and torches before the alleged invention was made, extensively advertised as possessing the identical virtues of the device of the patent. Acceptance of licenses where royalty is relatively insignificant does not of itself establish patent validity, Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d 948, since as against strong manufacturers competitors frequently find it more expedient to yield to the claims of a doubtful patent than to undertake the expense and trouble of patent litigation. There is here no substantial evidence of effort general to the industry to solve a problem which long defied it. The proof is limited to experiments of the patentees, and so far as it goes it serves to demonstrate lack of awareness of the teachings of the art rather than the inherent difficulties of the problem itself. They chose the long road to solution, and the patent law does not reward mere persistence, unassociated with original creative effort.

Decrees reversed. Causes remanded, with instructions to dismiss the bills for want of invention.