### HEBERLEIN v. OPHARDT et al.
### No. 62.

District Court, D. Colorado.
Jan. 9, 1940.

Martin E. Anderson and Dudley W. Strickland, both of Denver, Colo., for plaintiff.

W. A. McGrew, of Denver, Colo., and G. H. Bradfield, of Greeley, Colo., for defendants.

SYMES, District Judge.

This is a patent suit based on United States letters patent No. 2,144,491, granted January 17, 1939 to plaintiff, George J. Heberlein, application filed April 29, 1937, for certain new and useful improvements in weed burners.

The prayer is (a), said letters patent be declared valid and plaintiff to be the lawful owner thereof; and (b), the defendants be adjudged to have infringed claim 6 thereof.

The defendants plead the general issue and gave the statutory notice of the following defenses, that; (1), the burner defined in claim 6 of the patent in suit had been sold to the public and offered for sale to the public for more than two years prior to plaintiff's application; (2), the burner defined in claim 6 had been in public use for more than two years prior to plaintiff's application; (3), the plaintiff was not the original or first inventor or discoverer of the device defined in said claim 6, etc., and (4), the patent as defined in claim 6 has been patented, or described in certain patents and publications prior to plaintiff's supposed patent, etc. If any one or more of these matters be found for the defendants judgment shall be rendered for them with costs. Rev.Stats. § 4920, Tit. 35 U.S.C.A. § 69.

In his patent plaintiff describes a gasoline torch for use as a weed or cactus burner capable of manual operation, by a farmer for instance for burning weeds, grasshoppers, etc., light enough to be easily carried yet able to stand rough usage, a feature, according to the patent, not present in any of the prior art burners described in the 10 prior patents it lists.

His assembly discloses a convenient cylinder fuel tank with an air pump employed to put air pressure upon gasoline or other suitable fuel contained in the tank, and force it through a flexible connection to a feed pipe handle and on into the coil generator and burner. A shoulder strap is provided for carrying the same.

The patented device really begins with the feed pipe handle, made of a convenient length of tubular iron pipe that will carry the fuel and terminating in a cross tubular piece to form a "T"; a plurality of flexible, tubular coils of copper or brass, capable of being bent into so-called generator coils without splitting, each of which is attached to an end of the T-shaped cross-piece.

As the gasoline or other fuel is fed to the generator coil through the T-shaped feed handle, it first passes to the front end of the coil and then around and around through the coils to the back end of the coil and out through a hole or burner. By the time the fuel reaches the burner it is vaporized and mixes with the necessary air to support combustion. The burner is so arranged that it throws a big flame forward through the coils and out the open end of the housing, thus heating the coils and vaporizing the fuel therein.

For practical operation a housing around the coils is necessary to protect the flame from wind and cold. The particular housing adopted by Heberlein consists of four pieces of sheet metal clamped together in roughly rectangular form. The front end is wide open and extends far beyond the front end of the generator coils with sufficient clearance from the sides of the coils to afford proper ventilation and combustion, but not enough to permit the wind to blow in and interfere with the operation of the burner. The opposite end of this housing tapers to a small opening about the centrally located feed handle and admits, with the aid of small holes in the housing, sufficient air for proper combustion and to cool the feed handle. The patentee calls attention to housings described in prior patents, round, square, circular, etc., which are attached to the generating coils only. He claims merit and an advance in the art for his housing because it, unlike the others, is firmly supported by being clamped to the feed handle as well as to the generating coils, thus overcoming what he says is an inherently weak point in the other constructions.

In claim 6 he refers to his housing as longitudinally movable on the feed handle. This is possible, provided the operator first unscrews and releases the two clamps described. This feature has merit in that it permits the coils and burner to be exposed for the purpose of cleaning or repair, etc.

█ Plaintiff claims novelty in (1), the spacing of the hood or housing from the generating coils. (2), the longitudinal adjustability of the housing to expose the discharge nozzle to clean or repair. (3), the spacing of the hood from the handle to prevent heat exchange.

At the most these are but modest advancements in the art, not distinct steps forward, merely perfections or refinements of a known structure. The rule requires such claims to be narrowly construed. Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U.S. 285, 37 S.Ct. 502, 61 L.Ed. 1136. Snowden's patent No. 638,650, December 5, 1899, is an example of the prior art. It relates to a device for burning the thorns of cactus plants, etc. Like Heberlein's it has for its object a hood whereby the flame may be concentrated at any desired point and which "will be protected from the wind and otherwise rendered thoroughly efficient.". The assembly discloses a vaporizing coil, which is an extension of the handle to which a hood or housing is attached. The importance of the hood is emphasized as protecting the flame from the wind and the dissipation of the heat and flame, which is discharged through the generating coil and open end of the hood. Ribs, preferably three on the inside of the hood, suitably spaced and extending in the direction of the length of the hood and attached thereto for the entire height of the coil, contact the coil and hold the hood securely but detachably in place and spaced from the coil. This spacing of course minimizes heat exchange. Snowden emphasizes his hood, "which extends beyond the lower end of the coil," concentrates the flame on any point desired and is securely held on the vaporizing coils and can be conveniently removed.

True, unlike Heberlein, Snowden's hood has comparatively large openings at both ends, the air intake end being slightly smaller. Nothing in the record demonstrates that Heberlein's end construction, i. e., the small opening around the central handle, is of practical advantage in actual use. Plaintiff's expert Sweet emphasizes the importance of spacing, or lack of it around the handle, claiming it as a necessary handle-cooling feature, but he is unsupported by tests under operating conditions.

Furthermore excessive heating of the handle would seem to depend as much upon the rate of flow of fuel through the coil and the size of the flame, as the circulation of air through the intake opening.

Granting, however, the Heberlein construction is in this respect preferable, we note in all constructions disclosed in the various patents cited that the size of the openings, the one through which the flame is discharged, and the other, through which the air supply is drawn, vary. In most, but not all, the intake end is partly closed. The air supply is a matter of simple adjustment that requires nothing beyond skill of the art. No advance in the art can be claimed for any of the obvious methods used for that purpose. Heberlein's burner (plaintiff's Ex. B), like Snowden's, has four small holes in the housing, apparently to increase the air supply. Likewise Snowden provides spacing between his hood and the generator coils.

Other patents cited refer to the novel features claimed by Heberlein. For instance; Van Vorst, No. 1,728,580, September 17, 1929, says, page 1, column 1, line 19, "we provide a casing which is readily removable," and page 2, column 1, line 24, "a casing surrounding said coil having end walls, said casing being detachably fastened to said base member." Alex Ploch, No. 1,058,900, April 15, 1913, p. 1, column 1, line 23: "Another object of my invention is the provision of an improved shield which may be readily secured on or removed from the convolutions of' the feed tube adjacent the burner tip." "And will provide a restricted nozzle through which the burning gases are discharged." His construction also discloses that his hood, or shield, fits over the forward portions of the burner tube and tapers towards the other end. Ploch's construction is the only one with housing that can be moved on the handle without changing the structure.

Elze, No. 1,837,030, December 15, 1931, speaks of a windshield conveniently removable to admit of access to the nozzle member of the burner apparatus, so that said member may readily be replaced or repaired if necessary. His shield comprises a casing of elliptical section.

Our decision is indicated by Toledo Pressed Steel Co. v. Standard Parts, Inc., et al., May 29, 1939, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334. The Court resolved conflicting decisions of the 6th and 2nd Circuits (Standard Parts v. Toledo Pressed Steel Co., 93 F.2d 336 and Toledo Pressed Steel Co. v. Montgomery Ward & Co., 99 F.2d 806), involving the validity of the Withrow and Close patent No. 1,732,708, October 22, 1929, for a burner for use in outdoor warning signals and truck flares, consisting of a device to increase efficiency and prevent flame extinguishment due to wind and rain. The lower court, 93 F.2d 336, describes the invention as a burner with a metal guard to protect the flame from air currents and rain, designed to conserve sufficient heat around the wick to maintain the fuel oil above the flash point, and thus provide under all weather conditions a suitable supply of hydrocarbon vapor, which escapes from the flame openings in the metal cap, and burns outside the cap.

Claim 5 of that patent provides that this guard, which fits over the wick, is "spaced from the sides thereof" and has flame and air openings. Claim 11 describes provisions for "lateral exit of flame and restricted entrance of air for combustion." Claim 13 describes the guard as a cap having an imperforate dome-shaped top wall with a flame opening and a smaller opening for the inlet of air.

The Supreme Court affirmed the 6th Circuit and held the patent invalid in view of the prior art, saying all the patentees did was to put over the exposed wick of a torch "well known in the art, an inverted metal cup-like cap having holes in its sides, some to let in air for combustion and others to let out flame."

The opinion cites previous patents showing that caps, housings, or hoods of either illuminating or heating torches, designed to prevent the extinguishment of flame and regulating the flow of air for combustion, are old in the art to which they belong.

The patents we have discussed and others cited indicate there have been no major changes in the art since the patent to Snowden (supra), issued over 40 years ago. Claim 6 of Heberlein describes, perhaps improvements in function, but not in structure. Its material features have been in public use for many years and he is not the original or first inventor of any part or feature described therein. It follows that claim 6 of the patent is invalid. It is unnecessary to discuss the question of infringement.

Suggested findings of fact and conclusions of law for the defendants may be submitted.