## SEIBERLING RUBBER CO. et al. v. I. T. S. CO.

### No. 9323.

Circuit Court of Appeals, Sixth Circuit.

April 12, 1943.

J. Ralph Barrow, of Akron, Ohio (Hawgood & Van Horn, Arthur H. Van Horn, and J. Ralph Barrow, all of Cleveland, Ohio, on the brief), for appellants.

F. O. Richey, of Cleveland, Ohio (F. O. Richey, H. F. McNenny, J. D. Douglass, and Richey & Watts, all of Cleveland, Ohio, on the brief), for appellee.

John J. Darby, of Washington, D. C. (Wood, Arey, Herron & Evans, of Cincinnati, Ohio, John J. Darby, of Washington, D. C., Simon E. Sobeloff, of Baltimore, Md., and C. Willard Hayes, of Washington, D. C., on the brief), for Holtite Mfg. Co., Inc., and Cat's Paw Rubber Co., Inc., amici curiae.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

Stripped of immaterial matter, consideration of weight of evidence, innuendo, and unsustained and unsustainable defenses, the determination of the present patent infringement suit involves decision on the single issue of invention. We confine ourselves to the question whether improvement made by the patentee over prior art is such as denotes inventive quality. The District Court held that it did, and entered decree for injunction and accounting. As to infringement it perceived no debatable issue. Neither do we.

The patent involved is No. 1,987,573, granted to C. W. Ingwer January 8, 1935, upon an application filed May 31, 1930. It proclaims itself as for a composite rubber article, but is, in essence, directed to a rubber composition for lifts to be attached to heels, particularly the high wooden heels of women's shoes. Three claims were allowed, which are printed in the margin,[1] and the patent, as originally granted, was

---

[1] "1. A heel comprising a concavo-convex rubber body and a sheet of thin fiber molded and vulcanized to the entire concave surface of said body to prevent lateral displacement of the edge of the heel.

"2. A heel comprising an upper nonresilient solid portion, a lower ground engaging resilient portion provided with a concave attaching face, and means comprising a thin fiber material molded and vulcanized to the attaching face of the ground engaging portion and overlying the entire surface thereof for retaining the lower ground engaging portion from lateral displacement adjacent the upper solid portion.

"3. A heel comprising a concavo-convex rubber body and a sheet of thin fiber molded and vulcanized to substantially all of the concave surface of said body and extending to the edge of the heel at all portions thereof to prevent lateral displacement of the edge of the heel."

assigned to and is now owned by the appellee.

In the fabrication of women's shoes the high wooden heel demanded by past and current fashion is covered with satin, silk, or soft leather, enclosing the back and sides of the heel. The covering is drawn tight with the material adjacent to the top of the heel, folded over and glued to the wood. The rubber lift is then attached by nails driven into the center of the heel. If the leather or the fabric folded over the top of the heel is dislodged for any reason, the shoe becomes unsightly. It is said that prior to Ingwer's invention the flexing of the rubber heel lifts in and out as the wearer threw weight upon it, would pump the edges of the fabric outward, make the heel unsightly and receptive to dirt and water, causing a condition not to be tolerated by the wearers. The problem envisioned by Ingwer was to produce a minute, relatively soft rubber heel lift which would effectively seal the seam between it and the wooden heel, and would not dislodge the ends of the fabric folded over its top. The principal rubber heels in use in 1918 at the time the problem is said to have arisen, were the flat rubber and the concavo-convex rubber heel lifts, and both are said to have been inadequate since both, by the so-called pumping action, tended to push the edge of the fabric from under the lift and cause it to be exposed. It is urged that this problem, though recognized in 1918, was not solved until the Ingwer patent issued in 1928, although much effort was expended for ten years both by Ingwer and others in search of solution.

It will be observed that Ingwer claims a heel lift with a concavo-convex rubber body and a sheet of thin fibre molded and vulcanized to its entire concave surface to prevent lateral displacement at the edge of the heel. The inextensibility of the fibre was proclaimed as preventing the pumping action and the concavo-convex form as tending to seal the joint between heel and lift at its outer edges. Ingwer's application had a stormy voyage through the patent office. When first filed with 17 claims, including article and method, it was rejected upon prior patent disclosures. Amended claims were likewise rejected upon Rob-

erts No. 1,783,980, Feinstein No. 1,594,162, and Rudman No. 1,696,173. It was said by the examiner that the layer used by Warren No. 1,681,961, was inextensible and that the claims read directly on Roberts. The claims were reduced in number and again amended, but, for the third time, were rejected on the references of record, particularly on the ground that the patent to Feinstein stated that the thin fibre sheet is vulcanized to the rubber and that the patent to Bard No. 1,702,958, describes vulcanizing of fibre to rubber. The claims were then reduced to four, but were rejected as failing to distinguish patentability from the Warren patents wherein part of the concave face of the heel has a sheet of fabric molded and vulcanized thereto. Final rejection of claims revised and reduced to 3, followed on November 18, 1933. An appeal to the Board of Patent Appeals resulted in the issue of the claims now relied on, upon the sole ground that if the attachment of the fabric to the upper surface of the lift prevented relative movement between lift and fabric, this conception was not disclosed in the citations.

The failure of the Board to mention the Feinstein patent wherein is disclosed an attachment of inextensible fabric to the upper surface of the lift, is assailed by the appellant as indicating failure of the Board to consider the Feinstein patent. It was, however, referred to in the report of the examiner and cited in the briefs. We are not concerned with the mental processes by which the Board of Appeals reached decision, but with the question whether inventive advance is disclosed in the Ingwer patent. We have sketched patent office history merely to indicate lack of unanimity in the patent office and to point to decision there as based primarily on lack of precise anticipation, a not unusual characteristic of patent office decision. The District Court found invention to reside in the patent, influenced largely by the commercial success of the appellee.

We have found it necessary to give careful consideration to prior art in the application of the higher standards required, in recent years, by the decisions of the Supreme Court for the determination of invention,[2] and so to ascertain just what it

---

[2] Buono v. Yankee Maid Dress Co., 2 Cir., 77 F.2d 274; Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632; Perkins v. Endicott-Johnson Corp., 2 Cir., 128 F.2d 208; Cleveland Trust Co. v.

Schriber-Schroth Co., 6 Cir., 108 F.2d 109; United States Gypsum Co. v. Expanded Metal Co., 6 Cir., 130 F.2d 888, 892.

was that Ingwer did that had not, in essence, been done before, and whether it denoted invention or was within expected routine skill of those laboring in the art. The concavo-convex form of rubber heel was, of course, not the invention of Ingwer, nor does he claim it to be. In I. T. S. Rubber Co. v. Essex Co., 272 U.S. 429, 434, 47 S.Ct. 136, 138, 71 L.Ed. 335, it is pointed out that it is a characteristic of the concavo-convex type of rubber heel, because of the tendency of rubber to resume its original curved form to keep tightly pressed against the heel,—a characteristic called the "tight-edge effect"—and that it was referred to as early as 1889 in Ferguson's patent No. 638,228. The Tufford heel, reissue patent No. 14,049, owned by the present appellee and by it litigated in the Essex case and elsewhere, is of the concavo-convex type. Its merit in sealing the joint between lift and heel was widely proclaimed. It was old to insert an inextensible plate of metal, leather, or fabric, between the rubber lift and the wooden heel, as shown by the patents of Warren No. 1,-564,158, No. 1,681,961, and Ross No. 1,604,-659. The examiner pointed out that there was no patentable distinction between molding and vulcanizing fabric to a portion of the concave surface of a rubber heel, and covering its entire surface by such molding and vulcanizing, especially as Roberts shows the application of a plate to the entire area of heel surface. No inventive concept resides in the mere thought of a unitary construction of rubber and fabric. This was disclosed in Lucier No. 1,439,564, December 19, 1922, and Feinstein in his patent, also discloses such unitary construction.

Feinstein's heel lift is flat, but it may not be claimed, and perhaps is not, that to give the Feinstein heel the well-known conventional concavo-convex shape, denoted an inventive concept. What, then, was Ingwer's contribution to the art? The appellee says that forcing the edge of the rubber lift always against the edge of the heel with enough pressure to seal the seam, maintaining this situation during the flexing and unflexing of the heel in response to the tread of the walker, and at the same time limiting this action so that it would not dislodge the edges of the fabric, required a very careful reconciling of antagonisms to provide a kind of automatic force in the lift that would maintain the seam sealed under these conditions and not force the fabric out beyond the edge of the

heel; that this was accomplished by a molding and vulcanizing which resulted in a bond between two heterogeneous materials without disruption of either or of the joint. But Feinstein also bonded the two heterogeneous materials. His use of the term "vulcanizing" may be ambiguous in view of the practical construction that he and his licensee, the Day Wood Heel Company, put upon the patent, for they united the rubber and fibre by rubber cement. While this is sometimes referred to as a "vulcanizing cement" and the operation as "vulcanizing," it is undoubtedly not as good a bond as vulcanizing and molding.

But whatever may have been Feinstein's practice, it is clear that his patent teaches a unitary combination of rubber and fibre. Granted that Feinstein's bond between the two materials is less permanent than Ingwer's, because of the tendency of flexing to disintegrate the cement and so loosen the bond, the vulcanization of fibre and rubber was the invention neither of Feinstein nor Ingwer. Besides the suggestions in this specialized art itself, it must have been perfectly obvious to those working in rubber, that fibre and rubber could be successfully bonded by vulcanization. The practices of the great tire companies in uniting webbed fabric and later cord fabric to rubber by vulcanization, which permitted utilization both of rubber resilience and the restraint of fibrous material (Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d 948), must be adjudged as within the knowledge of the art with which we are dealing. The multiple plies were widely advertised. It is idle to urge that the automobile tire is in a nonanalogous art. When inventors of rubber heel lifts sought to exploit their patents they turned naturally to the tire companies for manufacture of their devices, Nerger to U. S. Rubber Co., Tufford to Miller, Feinstein or its licensee, to Firestone. The essence of the Ingwer concept, therefore, does not reside in the use of the concavo-convex form, the insertion of nonextensible fabric between lift and heel, or in joining rubber and fabric into a unitary construction. All these things had been done. We understand, of course, that these are combination claims and that a valid patent may issue for a new combination even though all its elements be old. But this is true only where the quality of invention is exercised in the combining to bring about a new mode of operation and produce a new and useful result. Ingwer

improved upon Feinstein by utilizing the well understood method of vulcanization to create a better bond between the two elements of his patented combination. Such improvement was advance only in degree, and as such must yield to the rule, that a mere carrying forward of a new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents doing the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent. Smith v. Nichols, 21 Wall. 112, 119, 22 L.Ed. 566; Glue Co. v. Upton, 97 U.S. 3, 24 L.Ed. 985; Dunbar v. Myers, 94 U.S. 187, 199, 24 L.Ed. 34; Railroad Supply Co. v. Elyria Iron Co., 244 U.S. 285, 37 S.Ct. 502, 61 L.Ed. 1136, and in our own court Ford Motor Co. v. Ohio Stamping & Engineering Co., 6 Cir., 56 F.2d 807, 808; Blackmore v. Ford Motor Co., 6 Cir., 56 F.2d 806.

██ Nor is there wanting in the history of the art, as disclosed by the record, facts that compel conclusion that the inventor but substituted new materials for old in a conventional combination. While such substitution may have resulted in a superior article it was not necessarily a patentable invention. Florsheim v. Schilling, 137 U.S. 64, 76, 11 S.Ct. 20, 34 L.Ed. 574; Kemper-Thomas Co. v. J. P. Gordon, 6 Cir., 67 F.2d 478; Firestone Tire & Rubber Co. v. United States Rubber Co., supra. Much was made of the commercial success of the Ingwer heel lift and undoubtedly it made a deep impression upon the court below, but the appellee was already a highly successful manufacturer of rubber heels with an established goodwill throughout the country. Its phenomenal growth, based upon the Tufford heel, is fully disclosed in the opinion of the late Judge Westenhaver, adopted by this court in Fetzer & Spies Leather Co. v. I. T. S. Rubber Co., 6 Cir., 260 F. 939, wherein it is shown that without advertising or soliciting salesmen, its business grew from a production of a few thousand heels a month to over 2¼ millions in three years, and with an initial capital of $30,000 in 1915, its undivided profits in 1918 were $800,000 after net earnings in the previous year of $482,000. It is little wonder that the appellee, with an extensive advertising campaign, could readily market an improved heel, and its success is little tribute to the inventive character of the improvement. Standard Parts Inc. v. Toledo Pressed Steel, 6 Cir., 93 F.2d 336, affirmed, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334. Likewise does this history obscure the picture sought to be drawn of the controversy as one between an enterprise of a poor but honest cobbler continued by two shoe-clerks after his death, and a powerful rubber company with highly developed selling and advertising talents. We are of the opinion that the claims in suit are invalid for want of invention.

It is necessary to add, however, that we are in no way influenced by references of the appellant to Keystone Driller v. Osgood Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293, and Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., 6 Cir., 95 F.2d 978. They have no bearing upon any issue here involved. The palpable innuendo in injecting these references into the argument but tended to raise an inference of appellant's lack of confidence in the meritorious defense presented,—an inference dispelled only by careful analysis of the patent in relation to prior art, and careful consideration of the brief of amici curiae.

Reversed and remanded with instructions to dismiss the bill.