**EATON MFG. CO. v. SIBLEY et al. (FORD MOTOR CO., Third-Party Defendant).**

No. 3753.

District Court, E. D. Michigan, S. D.

June 6, 1945.

Harness, Dickey & Pierce, of Detroit, Mich., for plaintiff.

Frank Sibley, of Detroit, Mich., for defendants.

I. Joseph Farley, of Detroit, Mich., for third party defendant.

LEDERLE, District Judge.

1. Plaintiff, Eaton Manufacturing Company, hereinafter referred to as Eaton, is an Ohio corporation. Defendants Eugene Sibley and Franklin D. Dougherty, trustee, are citizens of Michigan, and reside in this District. Defendant Sibley Rotary Pump Company is a Michigan corporation and has its principal place of business in this District. These three defendants will hereinafter be referred to as Sibley. Defendant Ford Motor Company, hereinafter referred to as Ford, is a Delaware corporation which transacts business in this District and the acts complained of took place in this District. Defendant Baldwin Rubber Company, named in the counterclaim, was dismissed from the action by consent of all parties.

2. Defendant Eugene Sibley owns United States Letters Patent No. 2,291,354, and defendant Sibley Rotary Pump Company has an exclusive license under that patent to manufacture and sell rotary pumps, except in the manufacture, operation, and salvage of motor boats and ships. Defendant Franklin D. Dougherty has no further interest in this patent. Prior to the filing of the complaint herein, Eaton manufactured and sold to Ford a number of rotary water pumps constructed according to the drawings and description set forth in the complaint and Exhibits 5 to 17 inclusive, all of which were substantially duplicates of physical specimen Exhibit "A" as received in evidence. Sibley notified both Eaton and Ford that these devices infringed the patent in suit and threatened to bring a suit for an injunction and an accounting.

3. Eaton filed its complaint for a declaratory judgment in accordance with Sec. 274d of the Judicial Code, 28 U.S.C.A. § 400, in which it sought a declaration that the Sibley patent was invalid, or, if valid, that the accused device did not infringe the patent. An actual controversy existed between the parties within the meaning of the Declaratory Judgment Act. Defendants Eugene Sibley and Franklin Dougherty joined Ford as a third-party defendant, and attached to their answer a counterclaim, charging infringement of the patent and seeking affirmative relief against Eaton, Ford and Baldwin Rubber Company. Among other matters agreed upon at a Pre-Trial Hearing under Rule 16, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, Sibley Rotary Pump Company was added as a defendant, adopting all pleadings of the other defendants.

4. The counterclaim also sets forth in detail certain transactions and communications that took place between Eugene Sibley and one of Ford's employees and it in effect charges that this employee by fraudulent misrepresentation induced Eugene Sibley to disclose to him confidential information with respect to the construction of a pump and that Ford in turn furnished this information to Eaton which Eaton used with knowledge of its confidential nature. The counterclaim alleges that "the acts of the said Baldwin Rubber Company, the plaintiff, and said Ford, constitute a defeat of said Sibley's and said Sibley Rotary Pump Company's patent rights, designs and inventions and constitute an ap-

propriation and piracy thereof and a breach of confidence and trust hereinabove set forth." In order to support this part of the counterclaim, Sibley attempted to establish a factual situation which would bring the case within the ruling of cases similar to Booth v. Stutz Motor Car Co., 7 Cir., 24 F.2d 415, also see 7 Cir., 56 F. 2d 962.

5. The testimony with reference to the confidential communications between Eugene Sibley and Ford's employee is in conflict. After taking into consideration all of the surrounding circumstances, I am forced to find as a fact that Ford employees never received any information from Eugene Sibley in confidence, except the specifications in the patent application that was then pending and that these specifications were kept in confidence so far as Ford's employees were concerned. There is no evidence that Ford transmitted any of the so-called confidential information to Eaton.

6. Subsequent to the date that the alleged confidential communication was received by the Ford employee, Sibley sold to Ford a pump embodying substantially all of the information that Eugene Sibley claimed that he had communicated to the Ford employee. This pump was sold to Ford by Sibley with the knowledge that it in turn was to be sold to the United States Government for experimental use on a land and water vehicle, commonly known as an amphibian jeep. There is no evidence of any communication between Ford and Eaton with reference to the particular devices involved in this suit until sometime after Sibley had sold this pump to Ford.

7. The patent in suit was issued on July 28, 1942. None of the completed accused devices was sold or delivered to Ford prior to August 9, 1942. If Sibley sustained any damages because of the acts of either Eaton or Ford these damages are fully covered by the infringement charge and cannot be based upon the alleged breach of confidence.

8. Many years prior to the date that Eugene Sibley transmitted the alleged confidential information to Ford, Sibley manufactured and sold to the public pumps substantially the same as the pumps involved in this suit. It is obvious that public information cannot be confidential information.

9. Eugene Sibley filed a patent application on July 9, 1938, in which he disclosed his alleged invention involved herein. He filed another application as a continuation in part of the 1938 application on July 29, 1940. He recognized that he was in a crowded art and in his specifications, stated, "It will be understood that pumps of this type * * * have long been known * * *. On the other hand, the present invention relates particularly to the material employed and may be practiced with various forms of gears." It is evident that when Sibley first filed his application he recognized the most he could claim was that he had invented a "new and useful improvement" to a well-known machine. After claims were repeatedly rejected by the Patent Office, he filed amended claims in which he abandoned the broad claim "to the material employed" and in order to obtain allowance of the patent in view of the prior art, the claims allowed were restricted and limited to the inclusion of the following specific features: (1) "Said pinion being slightly *oversized radially* with respect to the rotor and being formed of substantially incompressible material whereby the teeth of the pinion will be imbedded slightly in the compressible material forming the teeth of the rotor;" (2) "Said casing *being adjustable* in a plane perpendicular to the axis of said rotor and pinion to vary the amount which the teeth of the pinion are imbedded in the compressible material forming the teeth of said rotor;" and (3) "The peripheral surface of said pinion being *cut away intermediate to the teeth* to form a clearance with the rotor portion cooperating therewith at full intermesh there-between."

10. The accused devices involved in this suit follow the teachings of the prior art and do not embody any of the features of the patent in suit, which the patentee claimed as novel. These devices do not infringe any of the claims of the patent.

11. Pumps referred to in the specifications of the patent in suit, as pumps "that have long been known," consist of a combination of a central rotating member or pinion with a plurality of gear teeth constructed of metal, and an internally toothed gear member or rotor also constructed of metal, mounted to rotate freely in a housing or casing upon an axis eccentric to the axis of rotation of the pinion in which the pinion has one less tooth than the rotor. When operating, the rotor teeth

pass over the inlet and outlet ports in the casing in which the gears are enclosed, alternately opening and closing both the inlet and the outlet ports. Water or other fluid is forced into the pump by atmospheric pressure and forced out by the operation of the rotor. This type of pump is well illustrated by British Patent No. 9359 issued in 1915 to Lilly, United States Patent to Gollings No. 1,284,650 issued in 1918, United States Patent to Hill No. 1,970,146 issued in 1934, and a pump that was in use many years prior to the date of the alleged invention of the Sibley patent which was known in the trade as the Gerotor-May pump. Eugene Sibley was a witness in this case and frankly stated that he was familiar with the Gerotor-May pump at the time that he designed the pump of the patent in suit. Both the rotor and the pinion in these prior art devices were made of metal. In the patent in suit, the rotor is made of a compressible or resilient material. By this substitution of material, it is possible to make the pinion slightly oversize radially with respect to the rotor. This is the only inventive concept covered by the first four claims of the patent. Claim 3, which is illustrative of this group of claims, reads as follows: "In a pump of the character described, a cylindrical housing having fluid inlet and outlet ports at an end thereof, an annular, internally toothed rotor formed of resilient, compressible material, a metal cylinder or ring surrounding and secured to said rotor and fitting snugly within said housing, a driving pinion of lesser number of teeth than said rotor meshed internally therein, said pinion being slightly oversize radially with respect to said rotor and being formed of substantially incompressible material whereby the teeth of said pinion will be embedded slightly in the compressible material forming the teeth of said rotor, and means for driving said pinion."

12. Claims 5, 6, 7, and 8 add the feature of an adjustable casing in a plane perpendicular to the axes of the rotor and pinion in order to make it possible to vary the amount by which the teeth of the pinion are caused to be embedded in the compressible or resilient material of the rotor. Claim 5, which is typical of these claims, reads as follows: "In a pump of the character described, a cylindrical housing having fluid inlet and outlet ports at an end thereof, an annular, internally toothed rotor having an outer smooth cylindrical surface closely fitting within said housing, the outer surface of said rotor being adapted strongly to resist distortion, the internally toothed portion of said rotor being formed of resilient compressible material, a metallic driving pinion of lesser number of teeth than said rotor meshed internally therein, said pinion being slightly oversize radially with respect to said rotor whereby the teeth of said pinion will be embedded slightly in the compressible material forming the teeth of said rotor, and means for driving said pinion, said casing being adjustable in a plane perpendicular to the axes of said rotor and pinion to vary the amount which the teeth of the pinion are embedded in the compressible material forming the teeth of said rotor at one side of said rotor."

13. Claim 9 further limits the Sibley device to a structure in which a portion of the surface of the teeth of the pinion are cut away to form a greater clearance with the teeth of the rotor. The specifications state, "The form of the teeth employed in this type of gear may be widely varied, and in general it may be stated that it is necessary only for the teeth to be in constant contact." The selection of the particular contour of the teeth of the pinion and rotor is merely a "mechanic's choice" and does not disclose any patentable invention.

14. The only advantage claimed for the oversize pinion is that it would provide a more perfect seal without interfering with the passage of solid matter in the fluid being pumped because of the resiliency of the rotor. Evidence in this case proves conclusively that it is not necessary to have the rotor oversize to gain all of the advantages claimed for the substitution of the material in the rotor. The device accused in this suit does not have an oversize pinion but is constructed with a running fit like the prior art all metal devices, and the evidence discloses that it performed in exactly the same manner as the patented device so far as seal is concerned. The resilient material of the rotor became distorted sufficiently in operation so as to form a substantially perfect seal. If it is unnecessary to have the teeth of the pump embedded into the rotor it is unnecessary to have the casing adjustable.

15. United States Patent No. 1,926,692, to Tarbox discloses a rotary pump in which one of the gears is made of metal and the other of rubber or elastic material

and in that patent the specifications point out the advantages of this combination. In Tarbox the pinion is made of the resilient material and the specifications point out that the two parts may be made oversize in relation to one another substantially as claimed in the patent in suit. United States Patent No. 2,028,407 to Moineau and United States Patent No. 2,276,355 to Van Ranst likewise point out the advantages of having a combination in which one of the gears is made of resilient material.

16. In view of the prior art established in this case, the alleged improvements of the Sibley patent in suit do not disclose a patentable invention. The slight changes made over the prior art were well within the ordinary skill of those skilled in and familiar with the art to which the patent in suit relates.

### Conclusions of Law

■ 1. An actual controversy existed at the time the complaint was filed between Eaton and Sibley arising under the Patent Laws of the United States and this Court has jurisdiction in accordance with the provisions of the Declaratory Judgment Act. 28 U.S.C.A. § 400; E. Edelman & Co. v. Tiple-A Specialty Co., 7 Cir., 88 F.2d 852; Trico Products Corporation v. Anderson Co., 7 Cir., 147 F.2d 721; Ætna Life Insurance Co. v. Haworth 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450.

■ 2. Each of the claims of the patent in suit are combination claims and in the light of file wrapper history and the prior art, must be limited to the specific combination claimed. "A combination is an entirety. If one of its elements is omitted, . the thing claimed disappears. Every part of the combination claimed is conclusively presumed to be material to the combination and no evidence to the contrary is admissible in any case of alleged infringement. * * * The patentee makes all the parts of the combination material when he claims them in combination and not separately. * * * " Walker on Patents, Deller Edition, Vol. 3, page 1697 et seq. The devices alleged to infringe do not embody the principal elements set forth in the claims in suit, and, hence, there is no infringement. Van

Wormer v. Champion Paper & Fibre Co., 6 Cir., 129 F.2d 428; Beegle v. Thompson, 7 Cir., 138 F.2d 875.

■ 3. The fact that the particular accused devices involved in this case did not infringe the patent in suit does not relieve the court of the duty of passing upon the validity of that patent when that question is directly raised by the complaint. Trico Products Corporation v. Anderson Co., supra.

■ 4. The patent statute authorizes the issuance of a patent to any person who invents or discovers any new and useful improvement on a machine but every change made in an existing device does not necessarily establish that a patentable invention is disclosed. Whenever the validity of a patent is challenged it is the duty of the court to determine just what the patentee did that was not in essence done before. All of the elements claimed in the combination in the patent in suit were disclosed in the prior art in substantially the same kind of a combination. At the time the disclosure was made the state of the art was such that the combination disclosed would be obvious to any mechanic skilled in the art. Cleveland Punch & Shear Works Co. v. E. W. Bliss Co., 6 Cir., 145 F.2d 991; Timken-Detroit Axle Co. v. Cleveland Steel Products Corporation, 6 Cir., 148 F.2d 267; Seiberling Rubber Co. v. I. T. S. Co., 6 Cir., 134 F.2d 871. All of the claims of the patent in suit are invalid for want of invention.

■ 5. Where, as here, Sibley has failed to establish by a preponderance of the evidence that either Eaton or Ford made use of any confidential information disclosed by Eugene Sibley, he cannot recover on this theory.

6. A judgment is being entered simultaneously herewith, declaring that the accused devices involved in this suit do not infringe any of the claims of Sibley Patent No. 2,291,354; and that all claims of said Patent are invalid for want of invention; and perpetually enjoining Eugene Sibley & Sibley Rotary Pump Company from prosecuting or threatening to prosecute any action charging infringement of Sibley Patent No. 2,291,354 against plaintiff Eaton Manufacturing Company, its agents, vendees, or others in privity with it; and dismissing the counterclaim, with costs to be taxed in favor of Eaton and Ford.