**MINNESOTA MINING & MANUFAC-TURING COMPANY, Plaintiff-Appellant,**

v.

**NORTON COMPANY, Studebaker-Packard Corporation, Hadco Corporation, Defendants-Appellees.**

Nos. 18596, 18597.

United States Court of Appeals, Sixth Circuit.

June 1, 1970.

Thomas V. Koykka, Cleveland, Ohio, and Edward A. Haight, Chicago, Ill., William S. Burton, Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, Haight, Hofeldt & Davis, Chicago, Ill., Harold J. Kinney, Stanley G. DeLaHunt, Kinney, Alexander, Sell, Steldt & DeLaHunt, St. Paul, Minn., on the brief, for Minnesota Mining.

Carl G. Love, Washington, D. C., John W. Malley, Allen Kirkpatrick, William K. West, Jr., Cushman, Darby & Cushman, Washington, D. C., George H. Rudolph, Robert W. Poore, Jones, Day,

Cockley & Reavis, Cleveland, Ohio, Hugh E. Smith, Troy, N. Y., on the brief, for Norton Co. et al.

Before O'SULLIVAN[*], EDWARDS and COMBS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

On this appeal Minnesota Mining & Manufacturing Company asks reversal of a judgment of the United States District Court for the Northern District of Ohio, Eastern Division, holding invalid Minnesota's U.S. Patent No. 2,958,593. Minnesota had sued Norton Company, Studebaker-Packard Corporation, and Hadco Corporation for damages for alleged infringement of the said patent, identified as the Hoover Patent. Defendants filed a cross-appeal from the District Court's failure to award attorney fees as permitted by Title 35 U.S.C. § 285.[1]

The adversaries will be identified as Minnesota, appellant and cross-appellee, and Norton, appellee and cross-appellant. The case was tried to the Honorable Ben C. Green, whose opinion is reported as Minnesota Mining & Manufacturing Co. v. Norton Co., 280 F.Supp. 674 (N.D. Ohio E.D.1967, 1968).

We affirm upon the District Court opinion, including his denial of plaintiff's motion for a new trial.

### I. *Invalidity of the Hoover Patent.*

The District Judge denied validity to the patent because of his view that whatever advance over the prior art there may have been in the Hoover patent, such advance would have been obvious to a person having ordinary skill in the relevant art. Under Title 35 U.S.C. § 103,[2]

[*] Judge O'Sullivan, now a senior judge, was an active Circuit Judge at the time this case was submitted for decision.

[1] § 285: "The Court in exceptional cases may award attorney fees to the prevailing party."

[2] § 103. *Conditions for patentability; non-obvious subject matter*
"A patent may not be obtained though the invention is not identically disclosed

or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

Hoover was, therefore, not entitled to a patent.

The District Judge concluded "It is this Court's finding that United States Letters Patent No. 2,958,593 are invalid for lack of invention."

For many years, prior to 1952, the courts, by their decided cases had denied the quality of invention to improvements over prior art which would at the time have been obvious to one skilled in the art. In 1952 Congress added § 103 to the patent law so as to give statutory recognition of that "impalpable something" which the courts had long required for "invention". Hotchkiss v. Greenwood, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683 (1850); McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800 (1891); Harvey v. Levine, 322 F.2d 481, 485 (6th Cir. 1963). In the context of his opinion, we read the District Judge's language that the Letters Patent here involved "are invalid for lack of invention" as an application of Section 103 to the Hoover Patent.

The device which is the subject of the patent before us is described in appellant Minnesota's brief to this Court as follows:

"The invention relates as the patent styles it, to a 'low density open non-woven fibrous abrasive article'—i. e., an abrasive material made up in various forms, shapes and sizes, for a variety of uses in the abrasives field. It has found wide use, especially in industrial metal finishing, polishing and buffing operations, in cleaning off mill scale in steel making, in cleansing operations in the dairy industry and in hospitals, in floor maintenance in office and public buildings, and in the household and kitchen as a scouring pad."

The product made under the Hoover Patent was marketed by Minnesota under the brand name of "Scotch-Brite". Norton's allegedly infringing product carries the name "Bear-Tex". Minnesota's Hoover patent was issued June 10, 1960. Complaint was filed in this suit August 28, 1961. There followed extensive contesting on matters of substance and procedure, generating some 127 docket entries. Skilled advocates employed the ever-multiplying devices born of today's experimentation at simplifying and reducing the cost of litigation—interrogatories, discovery, pretrial, demands for admissions and productions, motions for summary judgment, etc. Counsel for defendant Norton, disappointed that his success was not sweetened by the allowance of attorneys' fees, attributed the District Judge's failure to discuss that issue to Judge Green's likely feeling that "enough judicial time had been expended on the case." Such, indeed, would be an understandable emotion.

The defendants once had won their case when another District Judge dismissed Minnesota's complaint for failure to timely apply for and obtain a license for the filing of applications for foreign patents as required by Sections 184 and 185 of the Patent Act, Title 35 U.S.C. §§ 184, 185. See Minnesota Mining & Manufacturing Co. v. Norton Co., 240 F.Supp. 150 (N.D.Ohio E.D.1965). We, however, reversed and remanded for trial on the merits. Minnesota Mining and Manufacturing Co. v. Norton Co., 366 F.2d 238 (6th Cir. 1966).

Believing that the opinion of the District Judge on remand quite adequately exposes and discusses the issues of the case, we will not undertake dissertation on the total case. The District Judge reviewed the prior relevant art. Although he noted that the Hoover Patent could not be said to have been directly anticipated by the prior art, he concluded that the disclosures of the earlier patents were such that with the arrival of nylon, as an agent to replace some of the less advantageous materials used in the earlier patents, any advance made by the Hoover patent was obvious. Two operations seem to be basic to the Hoover patent—first, the making of a web or wad (sometimes called a batt) to receive the abrasive agents, and second, the introduction of the abrasive agents into such web. The District Judge was of the

opinion that two earlier patents, Loeffler and Maisel, both described the first step, and their respective methods were obviously improved upon by Hoover when nylon became available. The Loeffler patent was cited to the patent office by the Hoover application; the Maisel patent was not.

The Maisel patent was pertinent only to the making of the web. It recited that:

"This invention relates to an insulating batt [web] of great resilience and loft, particularly suitable for use as an interlining for clothing, as an air or gas filter, and as a packing material for delicate objects."

Of this patent, the District Court said:

"This patent does not cover an abrasive article, but rather is on an 'insulating batt' or mat, or web, of 'great resilience and loft.' Without reciting in detail from the patent, this Court is convinced that the Maisel patent discloses and claims a bonded web structure essentially the same as is incorporated in the Hoover patent. The essential difference between the Maisel and Hoover patents is the absence of abrasive in Maisel."

Although the Loeffler patent was cited to the patent office, the District Judge found that Hoover's discussion of it in his application, whether deliberately or not, misrepresented its content and direction. Loeffler called his invention a "nonmetalic fibrous abrasive wad [web] and method of producing same."

At trial, Minnesota's expert, LePage, prepared an exhibit claimed to have been made according to the teaching of Loeffler. He employed jute waste as one of its components. Norton's expert, Rowe, produced a competing exhibit also portraying Loeffler, except that he used nylon and wool in place of jute waste. The Loeffler application provided that base materials other than jute waste could be employed, such as "sisal waste * * * wool waste or the like," and said that,

"The fibrous material may suitably comprise that derived from various vegetables or animal sources which provide filaments of substantial length and form adapted to readily entangle together into a more or less loosely matted and compacted mass."

The District Judge concluded that the Rowe exhibit was a correct portrayal of the Loeffler patent with nylon and wool substituted for jute waste. This critical finding, among others, led to the District Judge's conclusion that substituting nylon, with its expanding uses and availability, for jute waste, was an advance over the prior art that would have been obvious to one skilled in the art. Of this, the District Judge said:

"There can be no invention in an obvious substitution of new materials for old in a known combination. Seiberling Rubber Co. v. I.T.S. Co., 134 F.2d 871, 875 (CA 6, 1943). A peculiarly appropriate precedent cited by defendant in this regard is the decision in S.O.S. Co. v. Triangle Mfg. Co., 156 F.Supp. 665 (D.C.N.D.Ill.1957), aff'd General Foods Corp. v. Triangle Mfg. Co., 253 F.2d 227 (CA 7, 1958), wherein a patent on a plastic scouring pad was held invalid. Therein it was stated:

'Where a patented article, by virtue of a substituted material, differs from the old article in degree of excellence only, where it merely accentuates, or achieves to a greater degree, desirable qualities possessed to a less degree by the old article, *and where the allegd new properties or wider range of uses claimed for the patented article were not unexpected or surprising in view of the known properties or characteristics of the substituted materials,* patentable invention cannot exist.' *id.* 156 F.Supp. at 672. (Emphasis added.)

"The particular pertinence of the foregoing can best be appreciated by reference back to the LePage testimony regarding the deficiencies of jute (in the pre-nylon era) and the

teachings of the Englund and Rimer patents regarding the inherent advantages of utilizing new plastic synthetics in a scouring pad. See also, Martin-Marietta Corp. v. United States, 373 F.2d 972, [179 Ct.Cl. 70] (Ct.Cl., 1967), wherein the substitution of nylon for an old ingredient producing an improved commercial product was held to lack invention as being an obvious advance in the art." 280 F.Supp. at 691, 692.

Prior patents also teach something about adding an abrasive and adhesive mix into a web of varying degrees of openness. The Hurst, Englund, Rimer, Benner, and, again, Loeffler patents all point toward the concept and means described by the Hoover patent. Indeed a prior public use, the Fiberbond product, was manufactured by incorporating solids into a non-woven web, created on a Rando-Webber machine,[3] by adding them to an adhesive mix sprayed into the web. The step of substituting abrasive for other solids in the spray, in light of the prior art, can at best be viewed as a small and obvious advance.

In addressing us, the parties engaged in the current discussion as to whether determination of non-obviousness required by Section 103 involves a question of fact or law. Appellant Minnesota says that the total of the District Judge's rulings involve questions of law, all open to our review; appellee Norton argues that basically the District Court findings are factual, and, under Rule 52(a) cannot be disturbed unless we find that they are "clearly erroneous". This Circuit had said it both ways. See, e. g., Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406, 411 (6th Cir. 1964), cert. denied, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93, on the one hand and Maytag Co. v. Murray Corp., 318 F.2d 79, 81 (6th Cir. 1963), on the other. *Monroe Auto Equipment* is now the law of this Circuit. There Judge Phillips exposed the nuances involved in the subject and carefully delineated which parts of a District Judge's findings in such cases are fact and which are law. Judge Phillips' treatment of the subject was approved and his opinion cited in Graham v. John Deere Co., 383 U.S. 1, 36, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965). There the Supreme Court avoided over-precision by saying:

"While the ultimate question of patent validity is one of law, Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. [147] at 155, 71 S.Ct. [127] at 131, the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." 383 U.S. at 17, 86 S.Ct. at 694.

The Supreme Court command in Great A. & P. Tea Co. v. Supermarket Equipment Co., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), still may be the clearest indication of the proper nature of our appellate review:

"The Court now recognizes what has long been apparent in our cases: that it is the 'standard of invention' that controls. That is present in every case where the validity of a patent is in issue. It is that question which the Court must decide. No 'finding of fact' can be a substitute for it in any case. The question of invention goes back to the constitutional standard in every case. *We speak with final authority on that constitutional issue as we do on many others.*" 340 U.S. at 156, 71 S.Ct. at 132. (Emphasis added.)

3. The Rando-Webber machine was used by both Minnesota and Norton in the production of the web into which abrasives were intruded. The patents on this machine were not owned by any of the parties to this case.

In Section 103, Congress has merely outlined a somewhat functional inquiry into "obviousness" as opposed to "invention".

■ We are satisfied that to the extent that the District Judge's conclusions involved findings of fact, he was not clearly erroneous; also we consider that he correctly applied familiar rules of patent law.

## II. *Attorney fees.*

Norton, as cross-appellant, entreats us to cap its victory with an award of attorney fees and to add fraud committed on the patent office by Minnesota as an additional ground for invalidating the Hoover Patent. The prayer of cross-appellant's brief says:

"Norton submits that the Plaintiff-Appellant Minnesota should be found guilty of misconduct and unclean hands in the procurement of its patent, and specifically in the procurement of its retroactive foreign filing license. The patent is infected in its entirety by the misrepresentations made to the Patent Office.

"As a result, Minnesota cannot be entitled to any findings of validity or infringement of its patent, and Norton is entitled to attorneys' fees for having been put to the expense of the defense of this *unfair* litigation."

■ The District Judge refused to find the intentional fraud necessary to such relief. We will not do so. In our first opinion, 366 F.2d 238, *supra*, we noted that the patent office made a finding that Minnesota's premature filing of applications for foreign patents was due to inadvertence and that the involved patent did not involve the national security. We sustained the patent office grant of a retroactive license for the filing of applications for foreign patents.[4] At trial, and now presented to us, are parts of Minnesota's files which Norton claims

exhibit that Minnesota's claim of inadvertence was gross deceit of the Patent Office. Notwithstanding the fury of Norton's attack we find it without merit. It would be preposterous to believe that the patent lawyers and law firms representing Minnesota would, except through inadvertence, hazard what they believed were valid and important patents of their clients, by deliberate and pointless fraud upon the Patent Office. The involved patents did not involve the national security and the needed license for early foreign filing could readily be obtained.

■ Even if we viewed Minnesota's conduct in withholding these files from the patent office as less than the absolute honesty and good faith disclosure owed the patent office, Charles Pfizer & Co. v. FTC, 401 F.2d 574, 579 (CA 6, 1968), we would not award attorney fees to Norton. Such fees are awarded, in the Court's discretion, to prevent gross injustice to the prevailing party. Norton performed a public service in helping to show the invalidity of the Hoover patent in this litigation. But Norton's own attempts to secure a patent on any developments contained in its own "Bear-Tex" product—a copy of Minnesota's "Scotch-Brite" products—added considerable difficulty to the resolution of this case. Norton represented to the patent office and the public that "Bear-Tex" was a revolutionary product. Thus the District Judge was forced to pierce the excessive claims of Norton, as well as those of Minnesota, to protect the public interest from the grant of a patent monopoly which would "remove existent knowledge from the public domain." See Graham v. John Deere, 383 U.S. at 6, 86 S.Ct. at 688.

The relief sought by Norton's cross-appeal is denied.

The judgment of the District Court is affirmed. Each party will pay its own costs on this appeal.

---

4. "§ 184. *Filing of applications in foreign country* * * * The license may be granted retroactively where an application has been inadvertently filed abroad and the application does not disclose an invention within the scope of section 181 [national security] of this title."