BECKMAN INSTRUMENTS, INC. and Harold A. Frediani, Plaintiffs-Appellants,

v.

COLEMAN INSTRUMENTS, INC., Defendant-Appellee.

No. 14513.

United States Court of Appeals Seventh Circuit.

Nov. 9, 1964.

Ford W. Harris, Jr., Los Angeles, Cal., Richard S. Phillips, William R. McNair, Chicago, Ill., Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., of counsel, for appellants.

George B. Newitt, Edgar Bernhard, Sheldon W. Witcoff, Merrill A. Freed, Chicago, Ill., D'Ancona, Pflaum, Wyatt & Riskind, Bair, Freeman & Molinare, Chicago, Ill., of counsel, for appellee.

Before SCHNACKENBERG, KILEY, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This action was brought against Coleman Instruments, Inc. by Beckman Instruments, Inc. and Harold A. Frediani, for infringement of United States Letters Patent No. 2,740,694, entitled "Method and Apparatus for Control of Titrations and Other Phenomena." Frediani is the patentee and owner of the patent and Beckman the exclusive licensee. Coleman denied infringement and moved for summary judgment in its favor, which motion was allowed. From such judgment plaintiffs appeal.

The motion for summary judgment and its allowance by the District Court are predicated upon the premise that the patent issued contrary to Secs. 154 and 155 (now Secs. 184 and 185) of Title 35, U.S.C.A., and was, therefore, invalid. The question for decision is whether the Court under the undisputed material facts erred in applying and giving effect to these statutory provisions. The question is one of first impression and must be decided without aid of any court decision and with little, if any, help from the legislative history of the enactment.

On March 19, 1951, Frediani filed United States patent application Serial No. 216,325 (first application), and on November 22, 1952, filed United States patent application Serial No. 322,064 (second application), which resulted in the issuance of the patent in suit on April

3, 1956. Subsequent to the second application, the first application was rejected by the patent examiner as being inoperative. The second application recited that it was "a continuation-in-part of" the first application. Frediani in his oath attached to his second application stated that there were currently being filed applications for patents in Great Britain and West Germany. The former was filed November 7, 1952, and the latter November 24, 1952. No license was obtained by Frediani from the Secretary of Commerce or the Commissioner of Patents with respect to either of said foreign patent applications.

The pertinent provisions of the statute are as follows:

"§ 184. Filing of application in foreign country

"Except when authorized by a license obtained from the Commissioner a person shall not file or cause or authorize to be filed in any foreign country prior to six months after filing in the United States an application for patent or for the registration of a utility model, industrial design, or model in respect of an invention made in this country. A license shall not be granted with respect to an invention subject to an order issued by the Commissioner pursuant to section 181 of this title without the concurrence of the head of the departments and the chief officers of the agencies who caused the order to be issued. The license may be granted retroactively where an application has been inadvertently filed abroad and the application does not disclose an invention within the scope of section 181 of this title."

(The second paragraph of this section, omitted at this point, will be subsequently set forth and discussed.)

"§ 185. Patent barred for filing without license

"Notwithstanding any other provisions of law any person, and his successors, assigns, or legal representatives, shall not receive a United States patent for an invention if that person, or his successors, assigns, or legal representatives shall, without procuring the license prescribed in section 184 of this title, have made, or consented to or assisted another's making, application in a foreign country for a patent or for the registration of a utility model, industrial design, or model in respect of the invention. A United States patent issued to such person, his successors, assigns, or legal representatives shall be invalid."

In summary, these provisions expressly provide that an applicant for a patent who files an application in a foreign country must (1) delay such foreign filing for six months after the filing of his corresponding United States patent application, or (2) obtain a license authorizing such foreign filing in less than the mandatory six months' waiting period. The statute provides that any United States patent issued in violation of these specific requirements shall be invalid.

The crucial question is whether the six months' waiting period for the filing of the foreign applications commenced to run at the time Frediani filed his first application, which he abandoned, or his second application, upon which the patent in suit issued. Plaintiffs argue that it was the former; defendant, that it was the latter. The District Court sustained defendant's contention, which resulted as a matter of law in a judgment in its favor.

Plaintiffs' main argument is that both applications were for the same invention and that the second, being a continuation-in-part, is entitled to the same filing date as the first. In the same vein it is argued that the foreign applications were for the same invention as that described in the first application. The deposition of Frediani, and more particularly the oath made in support of his second application, which were made a part of defendant's motion for summary judgment, refute plaintiffs' contention.

Frediani in his oath stated:

"* * * that *this application* is a continuation-in-part of my prior application Serial No. 216,325, filed March 19, 1951, that as to subject matter disclosed in said prior application, I do not know and do not believe that this invention was ever known or used before my invention or discovery thereof, * * * that as to the subject matter disclosed, in *this* application, but not disclosed in said prior application, I do not believe that .the invention was ever known or used before my invention or discovery thereof, * * * and that no application for patent on *this* invention or discovery has been filed by me or my representatives or assigns in any country foreign to the United States, except as follows: Great Britain and West Germany (currently being filed). [Emphasis supplied.]"

Thus, in this oath he distinguishes his second invention from the first with the statement that the latter contained subject matter not disclosed in the former. That the examiner recognized the distinction as material is shown from the fact that he refused a patent on the first application but allowed it on the second. Furthermore, Frediani in his oath stated that the foreign applications were "currently being filed" on "this" invention, referring to that disclosed in his second application.

The second paragraph of Sec. 184 (previously omitted) provides:

"The term 'application' when used in this chapter includes applications and any modifications, amendments, or supplements thereto, or divisions thereof."

By this paragraph the term "application" as employed in the statute includes "any modifications, amendments, or supplements thereto, or divisions thereof." Even under plaintiffs' theory, it is not open to doubt that the subject matter of the second application was a modification, amendment or supplement to the first. It follows that the foreign applications filed within six months after the filing of the second application, without obtaining a license, invalidated the patent.

■■ This construction is consistent with the purpose of the statute, which is to provide for the temporary withholding of all patent disclosures to ascertain if foreign filing might be detrimental to the national security. The specified six months' waiting period affords the Secretary of Commerce and other governmental departments an opportunity to examine the application for the presence of security material before the information is sent abroad. The statute would fail of its purpose if an applicant were permitted to file a first application disclosing some features of a secret invention; after a six-month period to file a continuation-in-part application disclosing additional essential features, and then without obtaining a license to disclose his invention abroad. It is logical to believe that the insertion of the second paragraph in Sec. 184 was intended to preclude such a result.

■ Plaintiffs greatly stress the universal rule that the issuance of a patent carries with it the presumption of validity. No purpose could be served in discussing cases cited by plaintiffs in that respect. It is enough to say that the presumption cannot save a patent issued in contravention of the terms of .the statute.

■ Sec. 184 is applicable "only in respect of an invention made in this country." Plaintiffs contend that there is no evidence and no finding by the Court that the Frediani applications were for inventions made in this country. While there is no direct evidence on this point, we think the fact may be reasonably inferred from the circumstances in proof. In any event, no such question was raised in the District Court in argument, pleadings or otherwise, which in all probability is the reason that no finding was made on this issue. It is not necessary to cite cases for the well established rule that this defense cannot be success-

fully maintained for the first time on appeal.

■ In our judgment, the record reveals no genuine issue as to any material fact. In the main the issue presents a question of law, that is, an interpretation of the statute and its application to the facts of the case. It is our conclusion and we so hold that the patent was issued in contravention of the statute and is, therefore, invalid. The summary judgment was proper. It is

Affirmed.