**McCULLOCH MOTORS CORPORATION, a corporation, Plaintiff,**

v.

**OREGON SAW CHAIN CORPORATION, a corporation, Defendant.**

**No. 919–57.**

United States District Court
S. D. California,
Central Division.

July 30, 1963.

On Motion for New Trial Aug. 5, 1965.

See also 9 Cir., 323 F.2d 758 as to patent No. 2,622,636, and D.C., 234 F. Supp. 256 as to patents Nos. 2,923,329, 2,913,023 and 2,924,110.

852

Whann & McManigal, Los Angeles, Cal., for plaintiffs.

Lyon & Lyon, Los Angeles, Cal., and Buckhorn, Blore, Klarquist & Sparkman, Portland, Or., for defendant.

HALL, District Judge.

This suit involves two Patents No. 2,-622,636 (Hassler) and No. 2,508,784 (Cox), both concerned with chain saws.

A summary judgment was granted as to Patent No. 2,622,636 and an appeal taken, which so far as I can learn from the record presently before me is still pending. [See 9 Cir., 323 F.2d 758]

A motion for summary judgment has been made as to Patent No. 2,508,784, the Cox Patent, on the ground the patent is void under 35 U.S.C. 185, in that the applicant filed an application in Canada for the same patent without securing a license to do so, and that the retroactive license of the commissioner is invalid.

The court is indebted to counsel for their copious and thorough briefs.

The question to be resolved appears to be a limited one.

There is no dispute that the applicant filed in Canada without, or before the effective date of, a license issued under 35 U.S.C. 42(a) and 42(b) of the 1946 edition of U.S.C. which was then in effect: There is no dispute that the commissioner issued a retroactive license under the then effective 34 U.S.C. 106 (1946 Ed.) now 35 U.S.C. 184.

Neither party contends that the patent was detrimental to the security or interest of the United States under 35 U.S.C. 42 (1946 Ed.) now 35 U.S.C. 181. That being so the discretion of the commissioner, being specifically granted by both the 1946 and the 1952 Patent Acts when he finds inadvertence, is not to be disturbed, on this collateral attack.

The motion for summary judgment is denied.

ON MOTION FOR NEW TRIAL AND OBJECTIONS TO FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT (PATENT NO. 2508784)

Following a twelve-week trial and extended argument, the Court, on April 29, 1965, gave its oral opinion finding the defendant's Patent No. 2,508,784 valid and infringed by the plaintiff McCulloch and that the infringement was wilful.

Defendant Oregon submitted its proposed findings of fact and conclusions of law which were followed by McCulloch's motion for a new trial and objections to the findings of fact and conclusions of law.

■ Oregon makes the point that the motion for new trial is premature, contending that the findings of fact and conclusions of law should be signed and the judgment entered before a motion for new trial should be entertained. F.R. Civ.P. 59(b) provides that a motion for new trial "shall" be served not later than ten days after the entry of judgment. It is obvious that by the use of the words "shall" and "not later than" the ten days after entry of the judgment is an outside limit within which a motion can be made and not an inside limit. Especially is that so where, as here, the Court indicated in its oral opinion its conclusions to be incorporated in the findings of fact, conclusions of law and judgment, which opinion, of course, did not, and need not, descend to the particulars required in findings of fact, conclusions of law and judgment. The motion is timely. But in view of the fact that the motion for new trial and its supporting briefs and documents were made and filed after the findings of fact and conclusions of laws had been served, the losing party, in this case McCulloch, should, in good sense, be precluded from making another motion for new trial within the ten days after the findings of fact, conclusions of law and judgment are signed.

McCulloch's motion for a new trial asserts: (1) an insufficiency of the evidence to justify the decision of wilful infringement; (2) errors in law occurring at the trial in connection with the issue of wilful infringement. In support thereof it urges the following grounds:

(1) The Court erred as a matter of law in finding wilful infringement because McCulloch relied in good faith upon the opinions of competent counsel as to the validity and/or non-infringement of Patent No. 2,508,784 (hereinafter referred to as "Patent 784"); (2) The Court erred as a matter of law in excluding evidence of the intent and good faith of McCulloch in relying upon the opinions of competent counsel as to the invalidity and/or non-infringement of Patent 784 by excluding certain testimony of the witnesses John Ryde and Joseph Hegener because said testimony related to the belief of McCulloch in the invalidity and non-infringement of Patent 784; (3) The Court erred as a matter of law in disregarding the testimony of Henry V. Leavitt, in misconstruing the 1953 opinion of R. Welton Whann, and in ignoring Mr. Whann's 1956 opinion because in each instance the Court thereby committed a prejudicial and manifest error of fact which resulted in erroneous decisions both with respect to the validity of Patent 784 and with respect to the existence of wilful infringement; and (4) The Court erred as a matter of law in disregarding paragraphs VII, VIII and XVIII of the Settlement Agreement (Ex. TH) because under these provisions Omark was precluded as a matter of contract law from offering, using or relying upon the memoranda of Joseph Hegener (Exs. NB, NC and ND) to support a charge of wilful infringement.

Upon re-examination of the transcript and my notes, it is concluded that the testimony of Hegener and Ryde, which McCulloch in ground 2 claims was improperly excluded, was properly excluded.

The assertion in ground 3 that the court disregarded the testimony of Leavitt is not well taken. The Court did not disregard it; the Court simply found it to have no probative force in light of all the testimony and evidence in the case.

McCulloch relies generally, of course, on all of the pleadings, papers and exhibits on file herein, as well as the transcript of the proceedings at the trial, and (1) Memorandum of Points and Authorities filed concurrently, (2) a "Statement of Facts" filed concurrently, (3) Affidavit of R. Welton Whann, (4) Affidavit of Henry V. Leavitt, (5) particular volumes of the transcripts, and (6) certain specified exhibits.

Throughout the supporting Statements, Affidavits and Memoranda McCulloch's counsel resort to the all too common practice of claiming the Court "ignored" or "disregarded" certain evidence which counsel feel is favorable to their position. When a trial judge announces his decision on a trial consuming fifty days in which over a thousand exhibits were admitted and 5500 pages of transcript accumulated, the Court is hardly expected to write, or orally state, an analysis of each question and answer which has been given or each exhibit which has been produced throughout trial.

The long and short of the whole matter is that the Court did not ignore or disregard any of the evidence in the case but throughout the trial paid close attention to all the evidence, autoptic and auditory, and repeatedly interrupted witnesses in order that the Court may have fixed in its mind the precise testimony which the witness desired to give. During the course of the trial the Court observed the physical demonstrations of the parties, spent many weekends examining the physical exhibits (the chains, with a magnifying glass), and the documentary exhibits in the case, and concluded from the whole evidence, including the manner of the witnesses while on the stand, that it would be a miscarriage of justice to decide other than it did because: (1) the evidence preponderated so heavily in favor of the validity of the patent and its infringement; (2) such infringement was, and is, wilful, deliberate, intentional, purposeful, and with conscious knowledge that there was no clear anticipation of

the patent in suit by any prior patent and that the patent in suit was being infringed "by various of the saw chains manufactured" by McCulloch; (3) from and after Oregon filed its suit in the United States District Court of Oregon on March 20, 1953 against McCulloch's distributors in Oregon, McCulloch did not evince good faith in its dealings with Oregon, but was guilty of bad faith in such dealings with Oregon; (4) neither the validity of the patent nor its infringement by McCulloch was open to an honest doubt by McCulloch.

This conclusion is fortified by some of the documents filed by McCulloch in support of its motion for new trial which were not introduced in evidence. These documents were filed in support of McCulloch's contention that the Court "ignored" the opinion of McCulloch's counsel of December 27, 1956 (Ex. 511), which McCulloch claims shows that defendant's counsel thought the patent in suit to be invalid and not infringed, and which McCulloch asserts it relied on in good faith. The documents submitted in support of their contention are the following: a letter dated May 31, 1950 from McCulloch's counsel to their corresponding counsel in Washington, D. C., requesting a validity investigation of the patent in suit; letter from the Washington counsel dated *June 16, 1950* to McCulloch's local patent counsel which, inter alia, stated, "We have been unable to find a clear anticipation of the claims of the Cox patent. We have found a good many patents which are interesting but which do not meet the terms of the Cox claims. Some of these patents might be used in support of an argument that patentable invention is not disclosed in the Cox patent. Alternatively, these patents might be of assistance to your client in designing a satisfactory saw tooth to not infringe the Cox patent"; a letter of June 22, 1950 by McCulloch's local counsel transmitting the last above-mentioned letter to McCulloch Motors Corporation and stating, inter alia, "I have reviewed these patents and agree with the conclusions reached by our associates, namely, that *there is nothing identi-*

cal to Cox, but that the prior art taken in conjunction with the Hassler patent and other prior patents with which we are familiar, should form a substantial basis on which to attack the validity of the Cox patent"; there is a fourth letter dated June 19, 1953 to the lawyer in Chicago concerning litigation there.

These letters in effect say, "The Cox patent is valid, you are infringing it, but you can try and knock them out anyhow and at the same time try to design around them." It is to be noted that the letter of December 27, 1956 (Ex. 511) incorporates counsel's opinion of February 16, 1963 (Ex. 509) in which he states, "The claims are broad enough to cover various of the saw chains manufactured by your company," and suggests that they have a conference and explore the possibilities for working out a settlement.

In addition to the foregoing, Hegener (McCulloch) testified on April 4, 1965 that in December 1956 he requested the opinion of his counsel which resulted in the letter of December 27, 1956 (Ex. 511 incorporating Ex. 509) so heavily relied on by McCulloch; but it is to be noted that long prior to the time such request was made in December 1956, McCulloch had already "aggressively" proceeded to the design and manufacture of, and to the plans for active distribution of saw chain with teeth which infringed the patent in suit. (See Findings series 23, particularly Exhibits mentioned in Finding No. 23.23.) McCulloch's purpose to infringe was thus already set and in execution when it sought counsel's opinion of December 27, 1956. Furthermore, Hegener, who had charge for McCulloch, testified that he did not read or interpret Exhibit 509, and that he would not have understood it if he had.

Neither Section 284 of Title 35, United States Code, which relates to the increase of the amount of damages up to three times the actual damages, nor Section 285 of Title 35, United States Code, permitting the award of attorney fees to the prevailing party in "exceptional cases," use or mention any of the words, "wan-ton," "wilful" or "fraud," "bad faith" or comparable words or phrases. Section 284 does not even use the words "exceptional cases," which are used in Section 285 permitting the allowance of attorney fees in exceptional cases. The sections read as follows:

"§ 284. *Damages*

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

"When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.

"The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances."

"§ 285. *Attorney fees*

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."

Some of the cases hold that additional damages should be determined after an accounting, such as Pollock v. Martin Gauge Co., C.C.A.Ill.1919, 261 F. 201; Anchor Hocking Glass Corp. v. White Cap Co., D.C.Del.1943, 47 F.Supp. 451. But, in the trial of the instant case it was incumbent upon Oregon to prove not only validity but infringement. In proving infringement it necessarily included whatever evidence Oregon was able to produce that went to the question of infringement, and that evidence preponderated not only in favor of infringement but of wilful infringement by McCulloch as above set forth.

The claim of McCulloch that the issue of wilful infringement was not touched upon in the pretrial order did not and does not preclude the Court from considering that issue where the

issue of wilfulness is so inextricably involved with the question of infringement that they cannot be separated as was the situation in the instant case. Moreover, the thousands of pages of depositions which were taken by both of the parties prior to the trial and in preparation for trial indicated beyond peradventure that Oregon was relying, and intending to rely, upon their contention that the patent was wilfully, consciously and deliberately infringed by McCulloch. In such a situation the technicalities of pleading must give way to the broad statement contained in F.R.Civ.P., 54(c) that, except in default cases, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings. This should and does prevail in the situation here over the provisions of Rule 16 concerning pretrial, particularly in view of Rule 1 which mandatorily requires that the F.R.Civ.P. "shall be construed to secure the just, speedy, and inexpensive determination of every action."

Assuming, that before the Court can increase the amount of actual damages for infringement under Title 35, United States Code, Section 284, it must find wilfulness,[1] McCulloch asserts that the word "wilfulness" has had a definite meaning attached to it by the decided cases.

The courts have struggled with the word "wilful" not only in patent cases but in criminal cases as well. See the leading case on the subject of United States v. Murdock, 390 U.S. 389, 393–396, 54 S.Ct. 223, 78 L.Ed. 381 (1933).

The many cases touching on awards of additional damages under 35 U.S.C. 284, range in their expressions as to what will support such an award, from, faithful copying, and lack of "good faith" [Coleman Co. v. Holly Mfg., Co. 9 Cir. 1959; 269 F.2d 660], to fraud [Armstrong v. Emerson Radio & Phonograph Corp. S.D.N.Y.1959, 179 F.Supp. 95],

oppressive conduct [Laskowitz v. Marie Designer, Inc. S.D.Cal.1954; 119 F. Supp. 541], and where validity and infringement are not open to "honest doubt" [International Mfg. v. Landon, Inc., 9 Cir. 1964, 336 F.2d 723, cert. den. 379 U.S. 988, 85 S.Ct. 701, 13 L.Ed.2d 610.

■ But in reading those cases as well as the others cited by McCulloch and many others, it becomes apparent that each case must stand on its own facts. The words "fraud," "oppressive conduct," "good faith," "honest doubt," "deliberate intent," "wanton disregard," are just as elusive of exact definition as the word wilful. That word, referring as it does to a state of mind, is as impossible of precise definition as the word "fraud" or "conspiracy" or any of the many other words which are used in statutes to describe not only a state of mind but in many instances actual conduct. An illustration of the difficulty in defining words which deal with a state of mind or intent of a person is found in the old Montana case of Merchants' Nat. Bank v. Greenhood, 16 Mont, 395, 429, 41 P. 250, 259 where the court attempted to define fraud as follows:

"Fraud cannot often be proved by direct evidence. Fraud conceals itself. It does not move upon the surface in straight lines. It goes in devious ways. We may with difficulty know 'whence it cometh and whither it goeth.' It 'loveth darkness rather than light, because its deeds are evil.' It is rarely that we can lay our hand upon it in its going. We are more likely to discover it at its destination, before we know that it has started upon its sinuous course. When we so discover it, the searchlight of a judicial investigation goes back over its trail and lightens it from beginning to end. As the woodsman follows his game by slight indications, as a broken twig or a displaced pebble, so fraud

1. The word "wilfulness" is used in the comprehensive sense to cover all of the things hereinbefore mentioned as characterizing the infringement by McCulloch.

may become apparent by innumerable circumstances, individually trivial, perhaps, but in their mass 'confirmation strong as proofs of holy writ.' The weight of isolated items tending to show fraud may be 'as light as the shadow of drifting snow,' but the drifting snow in time makes the drift, the avalanche, the glacier. Fraud may hang over the history of the acts of a man like the leaden-hued atmosphere upon the house of Usher, 'faintly discernible but pestilent, an atmosphere which has no affinity with the air of heaven.' "

The innumerable facts and circumstances developed by the evidence during the trial, howsoever isolated or trivial each might be if standing alone, when taken together preponderate so heavily in support of bad faith on the part of McCulloch and a wilful, conscious, deliberate, intentional, and "aggressive" (the word is McCulloch's) intent to infringe, that no other conclusion can be reached.

The more precise a definition is of wilfulness, or fraud, or honest doubt, the easier it is for man's ingenuity to circumvent it. It must be left to a determination by the courts on a case by case basis as to whether or not such words fit the facts in the individual case.

■ Another word should be added concerning the position of McCulloch to the effect that the simple finding of wilfulness *compels* an award of *treble* damages. There is no such provision in the statute. The statute limits the damages to up to three times the amount of actual damages. Additional damages may be awarded in any sum less than that amount. What the damages will be and what percentage should be added will have to wait until the question of damages is tried, which will be done after the judgment becomes final on this phase of the case.

■ McCulloch argues that certain testimony, memoranda, and statements by the witness Hegener, an official of McCulloch, should not have been admitted because those statements were made before the effective date of the Termination Agreement dated March 29, 1957 of the Settlement Agreement dated July 8, 1954. In this connection McCulloch points to a provision in the Settlement Agreement that in any subsequent litigation "no acts committed by McCulloch, its officers or agents during the term of this Agreement shall after its termination * * * be construed as admissions relative to the * * * validity or scope of the patent in suit." The evidence admitted did not go to the validity of the patent. It did not go to the scope of the patent. It went to the frame of mind of McCulloch and was admissible for that purpose. It was also admissible for the purpose of rebutting the contention of McCulloch that Oregon forced the cancellation of the Agreement. One of the exhibits to which McCulloch objected and is now objecting is Exhibit ND, dated March 27, 1957, two days before the effective date of the Termination Agreement and is a memorandum to plaintiff's local counsel by Mr. Hegener, one of the chief officers of McCulloch, to the effect that there was a mutual agreement to terminate the Settlement Agreement. Furthermore, Oregon did not execute the Settlement Agreement until April 5, 1957 (Ex. U1, p. 6), and in a memorandum by Hegener dated April 5, 1957, it is stated, *inter alia,* that in a telephone conversation of that day "Mr. Gray (Oregon) said that he did not see any need for a termination agreement."

The Motion for New Trial is denied.

With relation to the objections of McCulloch to the findings of fact and conclusions of law, the Court has given them consideration and, except for modifications which will appear, all of them are overruled. The Court will proceed to make such modifications of or changes in the findings of fact and conclusions of law as it deems proper in light of all of the objections and the evidence in the case, and will sign the judgments not only in connection with the patent which was tried (2,508,784) but also in Patents

2,913,023, 2,924,110 and 2,923,329, the latter three of which the Court has heretofore indicated summary judgment to be granted. In this way the findings of fact and judgments on all four patents will be made and entered the same date, which will enable the parties to appeal from all of them at the same time instead of piecemeal.