**UNION CARBIDE CORPORATION, Plaintiff,**

v.

**MICROTRON CORPORATION, Defendant.**

**Civ. No. 2042.**

United States District Court
W. D. North Carolina,
Charlotte Division.

May 24, 1966.

**300**

William H. Bobbitt, Charlotte, N. C., John O. Tramontine, John F. Hohmann, and William Kerr, New York City, for plaintiff.

Paul B. Bell, Joseph H. Heard and Frank H. Kennedy, Charlotte, N. C., for defendant.

MEMORANDUM OF DECISION

CRAVEN, Chief Judge.

In this suit for patent infringement brought by Union Carbide Corporation against Microtron Corporation, Microtron counters with a motion for summary judgment on the ground that within six months of the date on which application for the patent was filed in the United States Patent Office an application was also filed in Canada without a license as required by Title 35 U.S.C.A. § 184. Such unlicensed foreign filing, Microtron contends, renders the patent invalid as a matter of law under Title 35 U.S.C.A. § 185. On February 28, 1966, after the institution of this lawsuit, Microtron secured from the United States Commissioner of Patents a retroactive license.[1]

The patent involved, No. 2,784,132, was issued upon the application of Emanuel N. Maisel filed in the United States Patent Office on May 11, 1953. The application was entitled "Batt and Method of Making Same". This application was assigned to the Laminaire Company, consisting of Maisel, Joseph J. Klein, and two other persons. Subsequently Fiber Bond Corporation became the assignee of the patent application, and in 1962 its stocks and assets were acquired by Union Carbide Corporation, the plaintiff in this action.

The Canadian application, corresponding to the one in issue here, was filed on October 10, 1953 (within six months of the United States filing). The Canadian patent issued on February 11, 1958.

Section 184 of Title 35 United States Code provides:

"Except when authorized by a license obtained from the Commissioner a person shall not file or cause or authorize to be filed in any foreign country prior to six months after filing in the United States an application for patent or for the registration of a utility model, industrial design, or model in respect of an invention made in this country. A license shall not be granted with respect to an invention subject to an

1. The license reads as follows: "License under 35 U.S.C. § 184 is hereby granted to file in any foreign country a patent application and any amendments thereto corresponding to the subject matter of the U. S. application identified above and/or any material accompanying the petition. *This license is retroactive to October 7, 1953 with respect to Canada.*" (Emphasis mine.)

order issued by the Commissioner pursuant to section 181 of this title without the concurrence of the head of the departments and the chief officers of the agencies who caused the order to be issued. The license may be granted retroactively where an application has been inadvertently filed abroad and the application does not disclose an invention within the scope of section 181 of this title.

"The term 'application' when used in this chapter includes applications and any modifications, amendments, or supplements thereto, or divisions thereof."

Section 185 of Title 35 United States Code provides:

"Notwithstanding any other provisions of law any person, and his successors, assigns, or legal representatives, shall not receive a United States patent for an invention if that person, or his successors, assigns, or legal representatives shall, without procuring the license prescribed in section 184 of this title, have made, or consented to or assisted another's making, application in a foreign country for a patent or for the registration of a utility model, industrial design, or model in respect of the invention. *A United States patent issued to such person, his successors, assigns, or legal representatives shall be invalid."* (Emphasis mine.)

■ Clearly, receiving the patent "without procuring the license" violates the statute. The Maisel patent was, at the time of its issuance, invalid under the portion of Section 185 which states: "A United States patent issued to such person * * * shall be invalid."

But the question for decision on Microtron's motion for summary judgment is whether the retroactive license procured on February 28, 1966, by Maisel (some nine years after the issuance of the patent) cured the invalidity imposed for foreign filing without a license prior to the end of six months after the United States application was filed.

In support of its motion, Microtron relies primarily on Minnesota Mining & Manufacturing Co. v. Norton Co., 240 F. Supp. 150 (N.D.Ohio 1965). That case held the filing of a patent application in a foreign country within six months of United States filing without complying with Title 35 U.S.C.A. § 184 renders the United States patent invalid from the date of issuance, and that the Commissioner of Patents is powerless to affect the validity or invalidity of the patent by issuing a retroactive license.[2] This case was considered and disapproved in Nordberg Manufacturing Co. v. Jackson Vibrators, Inc., Civil No. 63C2250, N.D.Ill. February 10, 1966 (letter opinion); Engelhard Industries, Inc. v. Sel-Rex Corp., 145 U.S.P.Q. 319 (D.C.N.J.1965); Davidson Rubber Co., Inc. v. Sheller Manufacturing Corp., 147 U.S.P.Q. 511 (S.D. Iowa 1965); McCormick v. Brenner, 146 U.S.P.Q. 340 (D.C.D.C.1965); Pillsbury Co. v. Brenner, 146 U.S.P.Q. 99 (D.C. D.C.1965); Blake v. Bassick Co., 245 F. Supp. 635 (N.D.Ill.1965); Pillsbury Co. v. General Mills, Inc., 252 F.Supp. 747 (D.C.Minn.1966); Barr Rubber Products Co. v. Sun Rubber Co., 253 F.Supp. 12 (S.D.N.Y.1966). To the same effect are: McCulloch Motors Corp. v. Oregon Saw Chain Corp., 245 F.Supp. 851 (S.D. Calif. 1963); Blake v. Bassick Co., 146 U.S.P.Q. 157 (N.D.Ill. 1963); and In re Rinker and Duva, 145 U.S.P.Q. 156 (Commr. of Patents 1964).

It is unnecessary to detail here the legislative history of Sections 184 and 185. That has been exhaustively reviewed in some of the cases cited above. For good discussions of such history, however, see 34 Geo.Wash.L.Rev. 373 (1965) and 64 Mich.L.Rev. 496 (1966).

In Blake v. Bassick, D.C., 245 F.Supp. at 637, the court, squarely disagreeing with the rationale of Minnesota Mining & Manufacturing Co. v. Norton, supra, stated that "express Congressional authorization in Section 184 gives the right

---

2. This case is presently on appeal to the Sixth Circuit Court of Appeals.

to grant retroactive licenses, and Section 185 refers to the license prescribed in Section 184. One such license prescribed by Section 184 is the retroactive license."

The court in Pillsbury Co. v. General Mills, Inc., supra, declared that "[t]he legislative history of Sections 184 and 185 does not suggest an interpretation of these statutes contrary to the majority holding as above stated. Moreover, it may be noted that in the Minnesota Mining and Manufacturing Co. case, [240 F. Supp. 150] the court, in part, at least, rested its decision [and was led astray] by [its] concluding that the word 'application' in Section 184 referred to the domestic application for the patent rather than the foreign application for which the license is to be granted. * * *"

"The broad language as to the right of the Commissioner to grant a retroactive license under Section 184 does not disclose any intention of Congress to limit the Commissioner's authority in this regard to unissued patents. It is not made to appear that the defendant or any member of the public will be, or has been, prejudiced by the interpretation of Section 184 which this Court now adopts, or that the safety of this country has been endangered in any way by the inadvertence of the plaintiff in failing to obtain a license within the six months' period. An interpretation of the law which is needlessly harsh is not justified under the admitted circumstances." Id. at 751.

Another case upon which Microtron places much emphasis is Beckman Instruments, Inc. v. Coleman Instruments, Inc., 338 F.2d 573 (7th Cir. 1964). The Court in Beckman, however, was not concerned with the validity of a patent as affected by the issuance of a retroactive license. That case held only that where foreign applications were filed within six months after the filing of a second United States application, without obtaining a license, the patent was invalidated. The second application was a "continuation-in-part"

3. See Hearings Before Subcommittee No. 4, Committee on the Judiciary, House of

of the first application held to have been abandoned. The crucial question in that case was whether the six months began to run from the date of the first United States application, which was abandoned, or the second application. *Beckman* is not in point here.

The purpose of Sections 184 and 185, as clearly pointed out by their legislative history, was to prevent inadvertent disclosure of information which might prove detrimental to the safety and welfare of this country.[3] That a retroactive license was granted in this case clearly indicates that the prohibited foreign filing was inadvertent and not detrimental to the national interest of the United States. Certainly the safety of the country has not been placed in jeopardy. To hold the patent invalid on the technicality urged would be unduly harsh and contrary to the better reasoned cases.

It is adjudged that the granting of the retroactive license was effective to cure the patent's invalidity caused by foreign filing within the six months period.

The motion for summary judgment will be denied.

Representatives, 81st Congress, 2d Session, on H.R. 6389 (1950).