MINNESOTA MINING AND MANUFAC-
TURING COMPANY, Plaintiff-
Appellant,

v.

NORTON COMPANY, Studebaker-Pack-
ard Corporation,

and

Hadco Corporation, Defendants-Appellees.

No. 16592.

United States Court of Appeals
Sixth Circuit.

Sept. 13, 1966.

Thomas V. Koykka, Cleveland, Ohio, Edward A. Haight, Chicago, Ill., for appellant, Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, Haight, Simmons & Hofeldt, Chicago, Ill., Harold J. Kinney, Stanley G. DeLaHunt, Carpenter, Kinney & Coulter, St. Paul, Minn., on the brief.

John W. Malley and Allen Kirkpatrick, Washington, D. C., for appellees, George H. Rudolph, Eben Cockley, Jones, Day, Cockley & Reavis, Cleveland, Ohio, Donald C. Alexander, William P. Streng, Taft, Stettinius & Hollister, Cincinnati, Ohio, Carl G. Love, William K. West, Jr., Cushman, Darby & Cushman, Washington, D. C., Hugh E. Smith, Troy, N. Y., on the brief.

Before WEICK, Chief Judge, and O'SULLIVAN and CELEBREZZE, Circuit Judges.

O'SULLIVAN, Circuit Judge.

This is an appeal by Minnesota Mining and Manufacturing Company (referred to herein as Minnesota) from a summary judgment which dismissed its suit against appellees, Norton Company, Studebaker-Packard Corporation and Hadco Corporation (referred to herein collectively as Norton) for infringement of a Minnesota patent. The dismissal was bottomed upon the District Judge's conclusion that Minnesota's act of filing several applications for foreign patents on the invention in suit without obtaining a license to do so from the Commissioner of Patents rendered the patent subsequently obtained in this country invalid. This was held to violate the provisions of 35 U.S.C.A. §§ 184 and 185.[1] The District Judge held that a retroactive license for such foreign filing, obtained pursuant to the provisions of section 184, during the pendency of the litigation, was ineffective to save the patent because it had not been obtained prior to the issuance of the United States patent in suit. Minnesota Mining and Manufacturing Co. v. Norton Company, 240 F.Supp. 150 (N.D. Ohio, E.D.1965).

Section 184 forbids application for a foreign patent on an invention made in this country prior to six months after application for the United States patent "[e]xcept when authorized by a license obtained from the Commissioner [of Patents]." This section is part of the Invention Secrecy Act of 1951, 35 U.S.C.A.

1. "§ 184. *Filing of application in foreign country.* Except when authorized by a license obtained from the Commissioner a person shall not file or cause or authorize to be filed in any foreign country prior to six months after filing in the United States an application for patent or for the registration of a utility model, industrial design, or model in respect of an invention made in this country. A license shall not be granted with respect to an invention subject to an order issued by the Commissioner pursuant to section 181 of this title without the concurrence of the head of the departments and the chief officers of the agencies who caused the order to be issued. The license may be granted retroactively where an application has been inadvertently filed abroad and the application does not disclose an invention within the scope of section 181 of this title.

The term 'application' when used in this chapter includes applications and any modifications, amendments, or supplements thereto, or divisions thereof."

"§ 185. *Patent barred for filing without license.* Notwithstanding any other provisions of law any person, and his successors, assigns, or legal representatives, shall not receive a United States patent for an invention if that person, or his successors, assigns, or legal representatives shall, without procuring the license prescribed in section 184 of this title, have made, or consented to or assisted another's making, application in a foreign country for a patent or for the registration of a utility model, industrial design, or model in respect of the invention. A United States patent issued to such person, his successors, assigns, or legal representatives shall be invalid."

§§ 181–188, enacted by Congress to prevent the publication and disclosure in a foreign country of an invention upon which a patent is sought in this country where such disclosure would "be detrimental to the national security." 35 U.S. C.A. § 181. The six month period before foreign application can be made and the requirement of a license for a foreign filing within such period are designed to provide opportunity for the Commissioner of Patents, if he thinks the disclosure might "be detrimental to the national security," to submit the application to the Atomic Energy Commission, the Secretary of Defense and other agencies concerned with national defense, in order that they may inspect the invention and determine whether its foreign disclosure might indeed "be detrimental to the national security." If such a determination is made, the mentioned section provides that the Commissioner "shall order the invention be kept secret and shall withhold the grant of a patent for such period as the national interest requires * *."

 Section 185 provides that any person who makes application for a foreign patent "without procuring the license prescribed in Section 184" shall not receive a United States patent for the involved invention and a "United States patent issued to such person * * shall be invalid." Section 184, however, provides that "the license may be granted retroactively when an application has been *inadvertently filed abroad* and the application does not disclose an invention *within the scope of* Section 181 of this title." (Emphasis added.) Minnesota did obtain a license for foreign filing made retroactive to the dates upon which the foreign filings were made. The question for our decision is whether such retroactive license was ineffective because it was obtained after the issuance of the United States patent. The District Judge answered in the affirmative. We reverse.

The invention of the patent in suit may be shortly described as a scouring pad containing properties and design that allegedly provide revolutionary improvement over prior techniques of polishing, scrubbing and buffing. Its most common usages are in floor maintenance, household and kitchen care, and in metal finishing and polishing. Infringement by defendant-appellees of the patent granted on such invention was the claim of Minnesota's dismissed complaint.

Steps to obtain the patent before us, Hoover, et al, U.S. No. 2,958,593, began with a first application on February 21, 1957, which disclosed the first eight claims of the patent, which are the claims in suit. More than six months later and without any intervening application for a foreign patent, a second application, a "continuation in part" of the original, was filed on October 8, 1958. This added disclosure of a further embodiment of the basic invention—Claims 12 and 13. On January 8, 1959, within six months of the filing of this second application, Minnesota's patent counsel applied for a license to file patent applications "in all countries" and on February 5, 1959, such license was granted. This license was not retroactive as there appeared to be no need therefor. A third application was filed in the U. S. Patent Office on January 11, 1960, as a continuation in part of the first two, setting out Claims 9, 10 and 11. No application for foreign filing under the final application was made and the patent in suit was issued on November 1, 1960, on this last application.

The complaint here was filed on August 28, 1961, and after many intervening procedural steps, Norton, on December 23, 1964, moved for summary judgment and to amend its answer on the newly discovered fact that within the several dates, January 19, 1959, to January 24, 1959, Minnesota's Chicago patent counsel had forwarded to five countries applications for foreign patents on the involved invention. These dates followed the January 8, 1959, application for license to make such filings but were prior to the February 5, 1959, issuance of the license by the Commissioner. The premature foreign filings came to light when Minnesota, on December 15, 1964, was obtaining information to make re-

sponse to interrogatories. Minnesota's counsel forthwith, on December 22, 1964, applied to the Commissioner of Patents for a retroactive license to cover the inadvertent foreign filings made between January 8, 1959, when request for a license was made and February 5, 1959, when a non-retroactive license was issued. The Commissioner of Patents granted the needed retroactive license on January 8, 1965; such license reciting that it was "retroactive to January 8, 1959," a date preceding the inadvertent foreign filings of January 19–24, 1959. The granting of the license constituted the Commissioner's finding that the premature foreign filings were inadvertent and that disclosure of the involved invention was not detrimental to the national security. These questions have been legislatively delegated to the Commissioner and his findings are not here challenged.

When the case was called for trial on January 4, 1965, with appellee Norton's motion for summary judgment on its amended answer undisposed of, appellant Minnesota informed the Court of its pending application for a retroactive license. Being of the view that such a license would not avail to sustain Minnesota's patent, the Court delivered an opinion from the bench holding the patent invalid. He did, however, entertain Minnesota's motion for reconsideration after it received its license on January 8, and on March 10, 1965, reaffirmed his original view in a formal opinion upon which the judgment on appeal was entered.

The District Judge based his ruling on a view that the retroactive license would be effective to cure the defect created by the untimely foreign filing only up to the point when the United States patent actually issued. After noting that Section 185 states: "notwithstanding any other provision of law * * * A United States patent issued to such person [one who has impermissibly filed abroad] * * * shall be invalid" he concluded, "The plain fact is that the patent did issue without a license and must be deemed invalid *ab initio. Without specific authorization from Congress*, the

Commissioner is powerless to affect the validity or invalidity of a patent after it has egressed from administrative channels. Consequently, the purported retroactive license issued on January 8, 1965 is inoperative * * *." (Emphasis supplied)

■ However, Section 184 itself is such "specific authorization from Congress." By its Act, Congress provided:

"The license may be granted retroactively where an application has been inadvertently filed abroad and the application does not disclose an invention within the scope of section 181 of this title."

This is clear language and we are unable to read into it the restriction relied on by appellee and imposed by the District Judge, viz.: that the Commissioner's authority to grant the license ends once the patent has issued. The only restriction imposed on the Commissioner is that he must find inadvertence in the foreign filing and that disclosure of the invention would not be detrimental to the national security.

Appellee Norton argues that the beginning and concluding language of Section 185, to wit: "Notwithstanding any other provision of law * * *," and "a United States patent issued to such person [one who filed abroad without the license prescribed in Section 184] * * * *shall be invalid*," must mean that once a patent has issued without *antecedent* compliance with § 184, its validity is forever destroyed. But, to the contrary, the statute in clear language provides for *retroactive* compliance, and when such *retroactive* compliance is supplied, the *retroactive* license must be taken as standing in its proper place in the sequence of: (1) U. S. application, (2) license, (3) foreign application, and (4) U. S. Patent.

The District Judge found Congressional intent to limit the granting of a retroactive license to the period prior to the issuance of the patent by emphasizing that had it intended otherwise, the second use of the word "application" in the relevant portion of § 184 would have been

followed by "or patent". We are not sure we understand this contention, but whether the second "application" refers to the foreign or the domestic application, the license when granted retroactively by the Commissioner, assumes its required position ahead of the foreign filing in the order of procedure.

 Both parties have, in addressing this Court, discussed the legislative history of §§ 184 and 185 of the Invention Secrecy Act of 1951 to support their respective contentions. We consider that Congress spoke plainly in its statute. We look for Congressional intent in its clear language. United States v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed. 2d 575 (1961); Hilliard v. United States, 310 F.2d 631, 632 (CA 6, 1962); United States v. Redmond, 328 F.2d 707, 710–711 (CA 6, 1964).

Much reference has been made to the so-called Boykin Act, (Act of August 8, 1946, 60 Stat. 940) which in its Section 6 clearly provided that an unauthorized foreign filing would not render an issued patent invalid, if subsequent authorization was obtained from the Commissioner. The District Judge and appellee concede that were the Boykin Act now in force, the Commissioner's retroactive license would sustain the patent in suit. Appellant, Minnesota, contends that the rule of the Boykin Act is contained in §§ 184, 185 of the 1951 Act. Appellee Norton argues that Boykin and its rule were purposefully repealed without incorporation into the Act before us. We do not consider resolution of this contest necessary here, satisfied that both the Boykin Act and the 1951 Act disclose Congressional willingness that the Commissioner do what he did here, even after the issuance of a patent.

The Commissioner of Patents has, by granting retroactive licenses after a patent has issued, expressed an administrative interpretation contrary to the decision we review. Such contrary interpretation has also been the holding of whatever courts have had occasion to rule on the question. Union Carbide Corp. v. Microton, 254 F.Supp. 299 (W.D.N.C. 1966); Barr Rubber Products Co. v. Sun Rubber Co., 253 F.Supp. 12 (S.D.N.Y. 1966); Pillsbury Co. v. General Mills, Inc., 252 F.Supp. 747, (D.C.Minn. 1966); Blake v. Bassick Co., 245 F.Supp. 635, (N.D.Ill. 1965); Pillsbury Co. v. Brenner, 146 U.S.P.Q. 99 (D.C.D.C. 1965); McCormick v. Brenner, 146 U.S.P.Q. 340 (D.C.D.C. 1965); Davidson Rubber Co., Inc. v. Sheller Mfg. Co., 248 F.Supp. 842 (S.D.Iowa, 1965); Engelhard Industries, Inc., v. Sel-Rex Corp., 145 U.S.P.Q. 319 (D.C.N.J. 1965); Nordberg Manufacturing Co. v. Jackson Vibrators, Inc., Civil No. 63C2250 N.D.Ill. Feb. 10, 1966 (letter opinion); McCulloch Motors Corp. v. Oregon Chain Saw Corp., 245 F.Supp. 851 (S.D.Cal. 1963); Blake v. Bassick Co., 245 F.Supp. 635 (N.D.Ill. 1963); In re Rinker and Duva, 145 U.S.P.Q. 156 (Comn'r of Patents, 1964). See also Mich.L.Rev. 496 (1966); 34 Geo.Wash. L.Rev. 373 (1965).

The case relied upon most heavily by appellees, Beckman Instruments, Inc. v. Coleman Instruments, Inc., 338 F.2d 573 (C.A.7, 1964) is not material since it did not deal with the question of the effect of a retroactive license. That case stands only for the proposition that if neither the ordinary nor the retroactive license provided for in Section 184 has been procured, untimely foreign filing is an effective defense in an infringement suit.

 Norton suggests that a retroactive curing of the defect here involved would leave unanswered the question whether there could have been any actionable infringement between the issuance of the patent and the grant of the retroactive license. Lest this point be further litigated upon remand, we hold that the defect of premature filing has been cured as of the date provided in the retroactive license, viz.: January 8, 1959.

The judgment is reversed and the cause is remanded for further proceedings consistent herewith.